UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| JEFFREY OSGOOD, ET. AL., ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| vs. ) | Case No. 4:07CV1365SNLJ |
| ) | |
| MIDWEST PARKING SOLUTIONS, ) | |
| ET. AL., ) | |
| ) | |
| Defendants. ) | |

**MEMORANDUM AND ORDER**

This matter is before the Court on defendant Gregory Bohlmann's motion to dismiss [78], filed October 2, 2009. Responsive pleadings have now all been filed and the matter is ripe for disposition.

The purpose of a Rule 12(b)(6) motion to dismiss is to test the legal sufficiency of a complaint so as to eliminate those actions "which are fatally flawed in their legal premises and designed to fail, thereby sparing litigants the burden of unnecessary pretrial and trial activity." Young v. City of St. Charles, 244 F.3d. 623, 627 (8th Cir. 2001) *quoting* Neitzke v. Williams, 490 U.S. 319, 326-27 (1989). A complaint must be dismissed for failure to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, 127 S.Ct. 1955, 1974 (2007)(abrogating the prior "no set of facts" standard set forth in Conley v. Gibson, 355 U.S. 41, 45-46 (1957)). Courts "do not require heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face." Id., 127 U.S. at 1974. A complaint must set forth

factual allegations which are enough to "raise a right to relief above the speculative level." Id., 127 U.S. at 1974.

In passing on a motion to dismiss, a court must view the allegations of the complaint in the light most favorable to the plaintiff. Scheuer v. Rhodes, 416 U.S. 232 (1974); Kottschade v. City of Rochester, 319 F.3d. 1038, 1040 (8th Cir. 2003). While a complaint challenged by a Rule 12(b)(6) motion does not need detailed factual allegations, a plaintiff must still provide the grounds for relief, and neither "labels and conclusions" nor "a formulaic recitation of the elements of a cause of action" will suffice. Bell Atlantic Corp. v. Twombly, 127 S.Ct. at 1265 (internal citations omitted). "Although the pleading standard is liberal, the plaintiff must allege facts – not mere legal conclusions – that, if true, would support the existence of the claimed torts." Moses.com Securities v. Comprehensive Software Systems, Inc., 406 F.3d. 1052, 1062 (8th Cir. 2005) *citing* Schaller Tel. Co. v. Golden Sky Systems, 298 F.3d. 736, 740 (8th Cir. 2002). In viewing the complaint in the light most favorable to the plaintiff, the court should not dismiss it merely because the court doubts that the plaintiff will be able to prove all of the necessary allegations. Bennett v. Berg, 685 F.2d. 1053, 1058 (8th Cir. 1982). The primary issue for a court to consider is not whether the plaintiff will ultimately prevail in the lawsuit, but whether the complaint adequately states a claim; and therefore, the plaintiff is entitled to present evidence in support of that claim. A complaint may not be dismissed based upon a district court's assessment that the plaintiff will fail to present evidentiary support for the complaint's allegations or will ultimately fail to prove one or more claims to the satisfaction of the factfinder. Bell Atlantic Corp. v. Twombly, 127 S.Ct. at 1969, n.8; Neitzke v. Williams, 490 U.S. at 327 ("What Rule 12(b)(6) does not countenance are dismissals based upon a judge's disbelief of a

complaint's factual allegations."). With this plausibility standard in mind, this Court turns to an examination of the plaintiff's complaint.

In Count III of the first amended complaint, plaintiffs bring a state law claim for "money had and received" against defendant Bohlmann and corporate defendant Midwest Parking Solutions[1]. Count III alleges that a contract existed between Midwest Parking and the plaintiffs wherein a $1.00 was deducted for each hour worked and held in a separate account to compensate Midwest Parking for its insurance deductible in the event of damage to a car parked by any one of the plaintiffs. At the end of their employment term, the money deducted from a plaintiff's wages were to be returned to said plaintiff if the plaintiff had not damaged any car during the course of their employment. Plaintiffs contend that despite demand for payment out of this "insurance deductible fund", no payment has been forthcoming to the plaintiffs. Plaintiffs contend that:

> "¶65. Defendant Midwest has a custom and practice of failing and refusing to pay its employees the amount that it allegedly holds in savings for them upon termination of their employment even in situations where an employee does not owe the company any money for its insurance deductible. In order to avoid paying such amounts, Defendant Midwest would fabricate excuses, including, but not limited to, that the employee was purportedly stealing from Defendant Midwest, or that such employee was vicariously responsible for damage to a Parker's vehicle that was caused by another employee of Defendant Midwest Valet, and thereby showed reckless disregard for the rights of Plaintiffs and other employees of Defendant Midwest."

Plaintiffs' First Amended Complaint [20].

Plaintiffs further allege that:

---

[1] Defendant Midwest Parking Solutions was the originally named corporate defendant; however, it now does business as "Midwest Valet" and is referred to as such in pleadings. For sake of clarity, the Court will refer to the corporate defendant as Midwest Parking Solutions or Midwest Parking since this was the originally named corporate defendant.

> "¶76. Upon information and belief, Defendant Bohlmann co-mingled corporate assets with his personal assets and thereby disregarded the corporate form such that the Court should pierce the corporate veil and hold him personally liable to Plaintiffs.
>
> ¶77. Upon information and belief, Defendant Bohlmann undercapitalized Defendant Midwest such that the Court should pierce the corporate veil and hold him personally liable to Plaintiffs."

Plaintiffs' First Amended Complaint [20].

Defendant Bohlmann argues that Count III should be dismissed because the plaintiffs have failed to allege sufficient facts to state a claim for relief under a "piercing the corporate veil" theory under Missouri law. He contends that the plaintiffs failure to allege facts demonstrating that Bohlmann had such dominion and control over Midwest Parking that Midwest Parking had no separate mind, will or existence of its own; or that Midwest Parking's corporate cloak was used by Bohlmann as a subterfuge to defeat public convenience, to justify a wrong, or to perpetrate a fraud. He contends that the failure to allege such facts is fatal to a claim of personal liability predicated upon "piercing the corporate veil" under Missouri law.

Plaintiffs contend that they have met the pleading requirements for personal liability under a "piercing the corporate veil" theory in that they have alleged that defendant Bohlmann has "co-mingled his personal assets with corporate assets, disregarded corporate formalities, and permitted Defendant Midwest Valet to operate in an under-capitalized condition." Plaintiffs' Response [81], pg. 4.[2] They assert that the factors for pleading alter-ego liability are flexible depending upon whether the situation involves imposing liability on the parent/affiliated

---

[2] In the future, plaintiffs' counsel should attach a page number to pages of every pleading, including a complaint.

corporation of another corporation or imposing liability on an individual in connection with a corporate entity.

The Court has carefully reviewed the parties' pleadings, and the relevant caselaw and determines that defendant Bohlmann's motion to dismiss will be denied.

Under Missouri law, a court may disregard a corporate entity and hold its owner(s) personally liable for corporate debts. 66, Inc. v. Crestwood Commons Redevelopment Corp., 998 S.W.2d. 32, 40 (Mo. 1999); Mobius Management Systems, Inc. v. West Physician Search, L.L.C., 175 S.W.3d. 186, 188-89 (Mo.App. 2005); *see*, Zubres Radiology v. Providers Insurance Consultants, 276 S.W.3d. 335, 339-40 (Mo.App. 2009) *citing* 66, Inc., *supra.* and Mobius, *supra.*; *see also*, Carpenters' District Council of Greater St. Louis and Vicinity, et. al. v. F.G. Lancia Custom Woodworking, L.L.C., 2009 WL 3160576, *3 (E.D.Mo. September 29, 2009) *citing* 66, Inc., *supra*. and Mobius, *supra.*; Local 513, Int'l Union of Operating Engineers, AFL-CIO v. Sunrise Construction, Inc., 2009 WL 1955754, *3 (E.D.Mo. July 6, 2009) *citing* 66, Inc., *supra.* and Mobius, *supra.*; Carpenters' District Council of Greater St. Louis and Vicinity, et. al. v. J&J Carpenter Contractors, L.L.C., 2009 WL 1161546 (E.D.Mo. April 29, 2009) *citing* 66, Inc., *supra.* and Mobius, *supra.*; Owner-Operator Independent Drivers Assoc. v. Ledar Transport, et. al., 2004 WL 5249148 (W.D.Mo. December 30, 2004) *citing* 66, Inc., *supra.* In order to "pierce the corporate veil" a plaintiff must show: 1) control, not mere majority or complete stock control, but complete domination, not only of finances, but of policy and business practice with respect to the transaction, such that the corporate entity had no separate mind, will, or existence of its own; and 2) such control must have been used by the corporation to commit fraud or wrong, to perpetrate the violation of statutory or other positive legal duty, or to commit a dishonest or unjust act in contravention of the plaintiff's legal rights; and 3) the control and

breach of duty must proximately cause the injury or unjust loss.  Id.  Missouri law does not take "piercing the corporate veil" lightly but when a corporation is so dominated by a person as to be a mere instrument of that person, and indistinct from the person controlling it, the court will disregard the corporate form if its retention would result in injustice.  Mobius, at 188 *citing* Saidawi v. Giovanni's Little Place, Inc., 987 S.W.2d. 501, 50405 (Mo.App. 1999).

In determining whether to "pierce the corporate veil", a court will look at a number of factors, including: the ownership structure of the suspect corporation, identity of persons making corporate decisions, the declared purpose of the suspect corporation, commonality of directors and officers, inadequate or under-capitalization of the suspect corporation, and the transfer of assets.  *See*, 66, Inc., at 40; Mobius, at 189; Collet v. American Nat'l Stores, Inc., 708 S.W.2d. 273, 286 (Mo.App. 1986); *see also*, Sunbelt Environmental Services v. Rieder's Jiffy Mkt., 138 S.W.3d. 130, 135 (Mo.App. 2004); Real Estate Investors Four, Inc. v. American Design Group, 46 S.W.3d. 51, 57-58 (Mo.App. 2001); Swall v. Custom Automotive Services, 831 S.W.2d. 237, 240-41 (Mo.App. 1992).

Defendant Bohlmann contends that the plaintiffs have failed to allege the requisite control, or that Midwest was used as a "subterfuge to defeat public convenience, to justify a wrong, or to perpetrate a fraud".  The Court disagrees.  In addition to the specific allegations of Count III regarding co-mingling of funds and under-capitalization, Count III incorporates by reference the factual allegations of Paragraph 47 of the Amended Complaint.  Paragraph 47 reads as follows:

> "47.  Throughout Plaintiff Osgood's employment with Defendant Midwest, Defendant Bohlmann had operational control of Defendant Midwest, an ownership interest in Defendant Midwest, controlled all significant functions of Defendant Midwest, and determined the employees' rates of pay and payroll practices."

Taking all the allegations of the Amended Complaint, including those in ¶¶47, 65, 76, and 77, at this initial stage of the proceedings, the Court finds that the plaintiffs' allegations of defendant Bohlmann's control and complete dominance of Midwest Parking's policies and business practices, such that Midwest Parking had no virtual existence of its own, allegations of co-mingling of personal and corporate assets by defendant Bohlmann, and allegations of under-capitalization of Midwest Parking, are adequate to survive a motion to dismiss Count III.

Accordingly,

**IT IS HEREBY ORDERED** that defendant Bohlmann's motion to dismiss Count III [78] be and is **DENIED.**

Dated this   11th   day of December, 2009.

_/s/ Stephen N. Limbaugh, Jr._
UNITED STATES DISTRICT JUDGE